UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| YOUNG KOH JAE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 16-11534-FDS |
| ABC FINANCIAL SERVICES, INC. ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**SAYLOR, J.**

This case arises out of attempts to collect a debt. Plaintiff Young Koh Jae contends that defendant ABC Financial Services, Inc. made multiple calls to his cellular telephone to collect fees allegedly owed to a third party health club. He contends that those calls were made without his consent, using an automated telephone-dialing system, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227. He seeks injunctive relief, actual damages, statutory damages of $500 per violative telephone call, and treble statutory damages.

ABC has moved for summary judgment. For the following reasons, the motion will be granted in part and denied in part.

**I.   Background**

   **A.   Factual Background**

Unless otherwise noted, the following facts are undisputed.

### 1. ABC Acquires Koh's Cellular Telephone Number

On July 5, 2014, Young Koh Jae joined a health club called Retro Fitness located in East Norriton, Pennsylvania. (Koh Dep. 23). When Koh joined the health club, he signed a membership agreement, on which he wrote his cellular telephone number. (Membership Agreement, Def. Ex. B at 1).

At all relevant times, ABC Financial Services, Inc. ("ABC") was the payment processing company for Retro Fitness. (St. Onge Aff. ¶ 2). It provided billing and account services concerning Koh's account. (*Id.*). The information provided on Koh's membership agreement, including his telephone number, was downloaded into the systems of ABC when he joined the health club. (*Id.* ¶ 3).

### 2. ABC Calls Koh

ABC makes calls to Retro Fitness members when there is a problem with billing or an account needs to be updated. (*Id.* ¶ 4). ABC contends that all of its calls to health club members are made from the number 800-897-6877 ("x6877"). (*Id.*). ABC made multiple calls to Koh during the period from January 6, 2016, through June 14, 2016, from the x6877 number concerning his Retro Fitness account. (ABC Call Notes, Def. Ex. E; Koh Cellular Telephone Call Records, Def. Ex. F). Koh agrees that ABC made calls during that period from the x6877 number and also contends that ABC made calls from a different telephone number, although he cannot remember what that number was. (Koh Dep. 43).

The parties agree that most of the calls from ABC to Koh went to voicemail or otherwise did not result in a live conversation. Koh alleges (and ABC has not contested) that at least some of those calls were made using an automated telephone dialing system. (Compl. ¶ 22; Def. Mot. for Summ. J. Mem. at 2). The number of occasions on which Koh answered an ABC call and

2

spoke with a representative is in dispute. Koh contends he spoke to representatives on two occasions, first in February 2016, and again in March 2016. (*Id.* at 37, 46). ABC contends that Koh spoke with a representative only once, on March 25, 2016. (St. Onge Aff. ¶¶ 9–11).

### a. **The Disputed February Call**

Koh contends that ABC called him sometime in February 2016 from a number other than x6877, but cannot recall what the number was. (Koh Dep. 37).[1] He contends that during the call, he spoke to an ABC representative and revoked consent for further calls, telling the representative to stop making "multiple automated calls." (*Id.* at 40, 43; Def. Ex. C ¶ 9). When asked at his deposition what his "best guess" was as to the length of that call, he responded that it lasted "[s]ometime around three minutes." (Koh Dep. 39).

ABC contends that the alleged February call never occurred. (St. Onge Aff. ¶ 10). It contends that all calls made to health club members are noted in the member's account notes and all live calls are recorded. (*Id.* ¶ 5). Both ABC's account notes and Koh's cellular telephone records reflect that five calls were made to Koh from the x6877 number in February. (*Id.* ¶ 9; Def. Ex. E at 4–5; Def. Ex. F at 10). ABC's account notes indicate that none of those calls resulted in a live communication between Koh and an ABC representative. (St. Onge Aff. ¶ 9). Instead, all calls either resulted in a dialing error or went straight to voicemail. (*Id.* ¶ 10).

---

[1] In response to interrogatories, Koh stated that the call occurred at some time "in or around" February 2016. (Def. Ex. C). However, his sworn deposition testimony clearly and unequivocally states that the call occurred in February 2016. It states,

> Q. When did the telephone conversation that you allege or the telephone call ABC made to you in February of 2016 from some number other than 800-897-6877 take place?
>
> A. I don't recall. Sometime in February.
>
> Q. You specifically recall it being in February?
>
> A. Yes.

(Koh Dep. 38).

The parties agree that Koh's cellular telephone records indicate that he received only two incoming calls in February 2016 lasting between one minute and thirty seconds and five minutes and thirty seconds in duration. (Def. Ex. F at 10).[2] Those two calls came from two different numbers, neither of which is the x6877 number. (*Id.*). Koh's telephone records show that he also made outbound calls to both of those numbers. (*Id.* 4, 9, 11). It is undisputed Koh never placed any outbound calls to ABC. (Koh Dep. 42).

b. **The March Call**

On March 25, 2016, ABC initiated a call to Koh from the x6877 number. Koh answered. (Koh Dep. 46–47; St. Onge Aff. ¶ 12). During the call, Koh spoke with an ABC representative for about three and a half minutes. (Def. Ex. E. at 7). ABC has provided a transcript of the call recording. (Def. Ex. H).

When Koh answered the March 25 call, an ABC representative greeted him and stated that she was calling "in regards to [his] Retro Fitness membership." (*Id.*). Koh responded "OK, ahh, I thought I cancelled that a long time ago." (*Id.*). She told him that the call was an attempt to collect a debt, and further explained that his account with Retro Fitness was still active. (*Id.*). The representative recommended that he "give [Retro Fitness] a call" to cancel the membership. (*Id.*). When Koh asked "can't you guys do that?" she responded, "we're the billing company so we just collect on the monthly dues but if you're cancelling you would have to go through the club." (*Id.*). When pressed, she stated that he could send an e-mail to ABC customer care in order to cancel the account. (*Id.*).[3]

---

[2] The five inbound calls from the x6877 number on February 2, 8, 13, 15, and 17, lasted for 89, 87, 88, 27, and 89 seconds, respectively. (Def. Ex. F).

[3] Following that call, Koh sent a number of e-mails to ABC concerning the cancellation of his Retro Fitness account. (Def. Ex. I–K).

During the course of the conversation, Koh did not refer to the alleged earlier call in which he revoked consent to receive calls.  (*Id.*).  He also did not use the explicit language that he purportedly used during the February call to demand that ABC stop calling.  Instead, Koh contends that the statement "I thought I cancelled that a long time ago" conveyed to ABC that he did not want to receive further calls.  (Koh Dep. 60).

ABC continued to call Koh until June 14, 2016.  (Def. Ex. E; Def. Ex. F at 10–11).  None of the calls between March 25, and June 14, resulted in live communication between Koh and an ABC representative.  (Pl. SMF ¶¶ 31–33).

### B. Procedural Background

Koh filed this action on July 25, 2016, alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  On April 21, 2017, ABC moved for summary judgment.

## II. Standard of Review

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir. 1990)).  Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational fact finder to resolve the issue in favor of either party."  *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted).  In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party.  *See O'Connor v. Steeves,*

994 F.2d 905, 907 (1st Cir. 1993).  When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quotations omitted).  The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256–57.

**III.    Analysis**

"Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls."  *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268 (3d Cir. 2013).  Generally speaking, the Act regulates the use of certain technology for the purpose of making calls to consumers.  *See Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338, 341–42 (6th Cir. 2016).  Among other things, it prohibits the use of an automatic telephone-dialing system to make calls to recipients in the United States or by persons in the United States, except for calls "made for emergency purposes or made with prior express consent of the called party."  47 U.S.C. § 227(b)(1)(A).  The Federal Communications Commission ("FCC"), which has authority to implement the TCPA through regulation, has interpreted the Act "to allow consumers to revoke consent if they decide they no longer wish to receive voice calls."  *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7993–94 ¶ 56 (July 10, 2015); *see also* 47 U.S.C. § 227(b)(2).

The parties appear to agree that defendant used an automatic telephone-dialing system to make multiple calls to plaintiff from January 6 through June 14, 2016.  They agree that plaintiff consented to receive those calls when he signed up for a health club membership with Retro Fitness.  They dispute, however, whether plaintiff ever revoked that consent.  Plaintiff contends

that he revoked consent to be called on two occasions: first in February 2016, and again in March 2016.[4]

### A. February Call

Plaintiff contends that he was called by defendant at some unknown time in February 2016, from some unknown number other than the x6877 number, and that during that call he told the representative to stop making "multiple automated calls." In support of that contention, he points only to his own sworn deposition testimony and interrogatory responses.

Defendant contends that the overwhelming evidence in the record indicates that the February conversation never occurred. Defendant points to its own call notes that indicate that none of the five calls it made from the x6877 number to plaintiff in February 2016 resulted in live communication. It contends that it records all live calls between a representative and health club members and that no such recording exists for any calls placed to defendant in February 2016. It further contends that its position is supported by plaintiff's own cellular telephone records. In coming to that conclusion, it starts with plaintiff's statement that the February call lasted "around three minutes." Plaintiff's cellular telephone records indicate that none of the calls plaintiff received in February that were between one and a half minutes to five and a half minutes in duration could have been placed by defendant, because plaintiff also placed outgoing calls to those numbers.

Despite the disparity in the evidence, there is a material issue in dispute concerning whether the February 2016 conversation occurred. Under Fed. R. Civ. P. 56(c)(1)(A), a party resisting summary judgment may support its contention that an issue is in dispute by citing to

---

[4] Neither party has argued that plaintiff's consent was not revocable under the circumstances. *Cf. Reyes v. Lincoln Auto. Fin. Servs.*, 2017 WL 2675363, at *5 (2d Cir. June 22, 2017) (finding that where provision of telephone number was required by an express term of a contract, revocation of consent to be called for purposes of debt collection would unilaterally alter a term of the contract).

deposition testimony and interrogatory answers, among other things. Although a factfinder could obviously find that defendant's contemporaneous business records provide a more reliable source of evidence than plaintiff's own self-serving testimony, it is not for the Court to resolve issues of credibility on a motion for summary judgment. *See Perez-Trujillo v. Volvo Car Corp. (Sweden)*, 137 F.3d 50, 54 (1st Cir. 1998). In addition, defendant's analysis of plaintiff's telephone records is not dispositive. Plaintiff did not state affirmatively and unequivocally that the call lasted three minutes. Instead, he stated that his "best guess" was that the call lasted "[s]ometime around three minutes." Viewed in the light most favorable to plaintiff, there is evidence in the record from which a reasonable juror could find that plaintiff revoked his consent to be called during a February call. Accordingly, the motion for summary judgment will be denied as to that claim.

  **B.**   **March Call**

  Plaintiff contends that he again revoked consent to be called during the March 25, 2016 call. There is no dispute as to the content of that call. The parties dispute whether plaintiff's statement that he "thought [he] cancelled [his Retro Fitness account] a long time ago" constituted a revocation of consent to be called by ABC.

  In July 2015, the FCC issued a declaratory Ruling and Order that provides guidance concerning when and how an individual may revoke prior express consent to be called. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (July 10, 2015). The guidance provides that a consumer "may revoke his or her consent in any reasonable manner that clearly expresses his or her desire not to receive further calls." *Id.* at 7998–99 ¶ 70. That standard is an objective one, requiring that the revocation must

be "clearly made" and "express a desire not to be called or texted." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017).

Plaintiff did not clearly communicate a desire that defendant's calls cease during the March 25, 2016 call. At most, his statement that he "thought [he] cancelled that a long time ago" put defendant on notice that he disputed whether he owed the debt being collected. It could not reasonably be understood as a clear revocation of consent to be contacted in the future concerning that debt. Among other things, stopping the calls would have no effect as to whether the debt was owed. Even if plaintiff had actually canceled his membership, that action would not have constituted a revocation of consent to be called concerning unpaid debt. *See Van Patten*, 847 F.3d at 1048 (finding that cancellation of health club membership does not constitute revocation of consent to be contacted by health club for advertising purposes). Because plaintiff did not clearly express a desire not to be called, nothing in the March 25 call could reasonably have been understood to constitute a revocation of consent. Accordingly, summary judgment will be granted as to that claim.

## IV.    Conclusion

For the foregoing reasons, defendant's motion for summary judgment is GRANTED in part and DENIED in part. Specifically, it is granted as to the claim that plaintiff revoked consent during the March 25, 2016 call, and is otherwise denied.

**So Ordered.**

                                              /s/ F. Dennis Saylor IV
                                              F. Dennis Saylor IV
Dated: July 5, 2017                       United States District Judge